IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

FILED
MAR 20 2003
MICHAEL W. DOBBINS
CLERK, U.S DISTRICT COURT

| | |
|---|---|
| Terrence McCabe,<br>on behalf of himself and<br>all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Crawford & Company, Budget Group, Inc.,<br>and Budget Rent A Car, Inc.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 01 C 8194<br>)<br>)  Judge Castillo<br>)  Magistrate Judge Brown<br>)<br>)<br>) |

DOCKETED
MAR 21 2003

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT CRAWFORD & COMPANY

### INTRODUCTION

Crawford & Company's form collection letter not only violates the FDCPA, but also stands in stark contrast to the fundamental mandates of its own compliance manual. Crawford blatantly ignored the express language of the Act, established legal precedent, and most ironically, its own "guide to producing trouble-free letters" and "avoid[ing] potential lawsuits"[1] when it misstated the validation notice required under §1692g of the FDCPA. For these reasons, summary judgment should be granted against Crawford for the maximum statutory damages allowed by law.[2]

On or about July 10, 2001, Crawford sent Plaintiff Terrence McCabe a collection letter, seeking to collect an alleged debt for damage done to a Budget rental truck.[3] Crawford drafted

---

[1] *See* American Collectors Association, Inc.'s FDCPA Compliance Guide, p. 1. Relevant portions of the Guide are attached hereto as Group Exhibit 1.

[2] *See Miller v. McCalla, et al.*, 98 C 5563, (N.D. Ill. Jan. 24, 2001) at p.8 (order granting plaintiff's motion for summary judgment and finding that intentional noncompliance justified the award of the "maximum allowable statutory damages: $1,000 for Miller, and either a half million dollars or 1% of the McCalla Firm's net worth, whichever is less, for the absent class members.") Attached as Exhibit 2.

[3] *See* Statement of Uncontested Facts at ¶¶ 15, 17.

1



the form of this letter specifically for its Budget Rent A Car collection accounts[4] and sent the letter to McCabe and the 278 members of the national class previously certified in this action, Class A.[5]

Crawford's collection letter violates the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*, and the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.*, ("ICAA") because it, (1) makes false and misleading representations regarding the FDCPA's critical §1692g notice, (2) fails to properly track the FDCPA-required language for thirty (30) day validation notices, and (3) unlawfully attempts to collect amounts for damages done to rented motor vehicles before reaching an agreement with the renter as to damage due or obtaining a legal determination of the damage due (as required by the Illinois Vehicle Code, 625 ILCS 5/6-305.2).[6]

There is no dispute as to the following material facts:

(1) Crawford's validation notice does not advise the consumer that the dispute must be in writing;

(2) Crawford's validation notice does not advise that the consumer may dispute a portion of the alleged debt, and not just the whole debt; and

(3) Crawford sends out its collection letters prior to the time when an agreement or legal determination of damages and liability has been made.[7]

Crawford cannot contest the language of its own form collection letter, nor the admission made in identifying the members of Class B. Accordingly, because Crawford's letter is false and misleading and fails to track the language of the statutorily-mandated validation notice,

---

[4] Dep. of Kevin Buhr, p. 45, ln. 11-13, attached to L.R. 56.1 Statement as Exhibit 7.

[5] *See* Statement of Uncontested Facts at ¶ 20.

[6] According to Crawford's records, there are 19 members of certified Class B, which includes those individuals, with addresses in Illinois, who were sent collection letters by Crawford for amounts alleged owed for damage to rented motor vehicles in contravention of 625 ILCS 5/6-305.2(f).

[7] *See* Statement of Uncontested Facts at ¶¶ 23, 24, 26-33.

2

judgment on Plaintiff's claims under the FDCPA (§§ 1692e, f, and g) and the ICAA (§§ 20 and 31) must be granted in his favor and in favor of the members of Classes A and B.

**I.  Standard for Reviewing Summary Judgment Claims Within the Context of the Fair Debt Collection Practices Act**

Because the Fair Debt Collection Practices Act is a strict liability statute, proof of one violation is sufficient to support summary judgment for a plaintiff.[8] In light of this strict liability standard, a consumer need not show intentional conduct by the debt collector in order to be entitled to damages.[9] Yet here, Crawford is hard pressed to argue that its violations were not intentional. Armed with its FDCPA Compliance Guide and a summary chart of the relevant provisions applicable to rental cars under the Illinois Motor Vehicle Code, Crawford had all the information necessary to craft a compliant collection letter. It chose not to.

**II.  Despite Having Three Separate Sources for Guidance, Crawford & Company's Letter Fails to Provide the Correct §1692g Notice**

Despite the fact that model §1692g validation notice language appears in Crawford's own compliance manual, the FDCPA itself, and several notable Seventh Circuit decisions, Crawford sailed away from these safe harbors when it decided to draft its own violative notice.[10] Section 1692g of the FDCPA mandates that a debt collector provide a consumer with a validation notice advising the consumer of certain rights. The notice must set forth the procedure under which a consumer may dispute a debt, request verification of a debt, or obtain certain information about

---

[8] *See Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1046 (W.D. Wis. 2002). The court adds that, "One false or misleading statement in a collection letter renders the entire communication false or misleading and constitutes one violation." *Id.* at 1047. *See also Cacace v. Lucas*, 775 F. Supp. 502, 505 (D.Conn. 1990); *Traverso v. Sharinn*, 1989 U.S. Dist. LEXIS 19100, *4 (D.Conn. Sept. 15, 1989).

[9] *See Pittman v. J.J. Mac Inttyre Co. of Nevada, Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997). *See also Russell v. Equifax A.R.S.*, 74 F.3d 30, 36 (2d Cir. 1996)("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.")

[10] *See Bartlett v. Heibl*, 128 F.3d 497, 501-02 (7th Cir. 1997). *See also Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003).

3

the creditor within 30 days of an initial communication from a debt-collector. Under the FDCPA, this validation notice must be effectively communicated, and may not be overshadowed, confounded or diluted as seen from the perspective of the "unsophisticated consumer."[11]

Crawford's notice, when taken in conjunction with its failure to follow its own compliance guide, calls into question Crawford's intention of complying with the Act.

### A. Crawford Completely Ignored Its Own Compliance Manual When Drafting the Validation Notice At Issue

Crawford's collection letter[12] is deficient under 15 U.S.C. §1692g in two fundamental ways. First, Crawford omitted the words "in writing" from its explanation of how to dispute the debt.[13] Second, Crawford failed to include the words "any portion thereof" in its description of what charges the consumer could dispute.[14]

The plain language of Sections 1692g(a)(3) and g(a)(4) of the FDCPA provide that the debt collector's validation notice shall contain:

> a statement that unless the consumer, within thirty days after receipt of notice, disputes the validity of the debt, **or any portion thereof**, the debt will be assumed to be valid by the debt collector
>
> a statement that if the consumer **notifies the debt collector in writing** within the thirty-day period that the debt, **or any portion thereof**, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector (emphasis added)

Crawford's notice explains only that the consumer has a right to dispute "this claim," and "the charges owed" and mentions nothing about the consumer's right to dispute a portion of the

---

[11] *Bartlett,* 128 F.3d at 499; *Avila v. Rubin,* 84 F.3d 222, 227 (discussing the unsophisticated consumer standard).

[12] Represented by the form of the letter sent to McCabe on July 10, 2001 and attached to Plaintiff's L.R. 56.1 Statement as Exhibit 4.

[13] *See* Statement of Uncontested Facts at ¶ 24; Exhibit 4 to L.R. 56.1 Statement.

[14] *See* Statement of Uncontested Facts at ¶ 24; Exhibit 4 to L.R. 56.1 Statement.

charges claimed to be due and owing. Defendant's failure to provide notice of the right to dispute merely a portion of the debt is especially problematic in the context of a dunning letter that seeks to collect a debt divided into multiple parts, as does the letter at issue here. Crawford's letter seeks to collect a variety of charges, (for physical damage, loss of use, salvage proceeds, tow charge, administration fee, and Crawford's fee),[15] and Plaintiff and the class should have been correctly advised.

Crawford's own FDCPA compliance manual has this to say: "It is important that you track, verbatim, the language required by Section 809 [§1692g]."[16] The manual goes on to specifically set forth the required language and explains, "The above validation notice should appear on the front side of the first dun in the same size, color and print as appears in the text of the dun. <u>Do not change any of the language</u>."[17] (emphasis added)

Even more telling, the manual provides a Compliance Checklist. The Checklist includes a question, "Does your first dun include the following language...[text of §1692g omitted]" and warns, "IF YOU ANSWER **NO** TO <u>ANY</u> OF THE FOLLOWING QUESTIONS, YOUR DUNS MAY BE IN VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT" (emphasis in original).[18] Despite these warnings, Crawford intentionally chose to draft the letter at issue. And Crawford's letter did not contain the mandated language.

---

[15] *See* Exhibit 4 to L.R. 56.1 Statement.

[16] *See* American Collectors Association, Inc.'s FDCPA Compliance Guide, p. 4. Relevant portions of the Guide are attached hereto as Group Exhibit 1.

[17] *See* American Collectors Association, Inc.'s FDCPA Compliance Guide, p. 7. Relevant portions of the Guide are attached hereto as Group Exhibit 1.

[18] *See* American Collectors Association, Inc.'s FDCPA Compliance Guide, p. 25. Relevant portions of the Guide are attached hereto as Group Exhibit 1.

**B. Crawford Completely Ignored Case Authority Existing at the Time It Drafted the Collection Letter in this Case**

At the time Crawford drafted its national form collection letter, case authority already existed that cautioned against Crawford's approach. The FDCPA regulates the content, placement, and provision of the validation rights notice and an incomplete statement of 15 U.S.C. §§ 1692g(a)(1)-(5), as Crawford's letter provides, violates the Act.[19] In fact, the Ninth Circuit specifically ruled that a collection letter that fails to inform the debtor that he could dispute any portion of the debt (as Crawford fails to do here) violated the FDCPA.[20]

Plaintiff's expert, Manuel Newburger,[21] testifying on the scope or the violations, states as follows in his opinion letter:

> The validation notice is one of the two fundamental disclosures mandated by Congress, the other being the "mini-Miranda" warning mandated [sic] 15 U.S.C §1692e(11). The validation notice has been mandated from the time the FDCPA was enacted, and it has not been changed by Congress in either of the two previous amendments to the Act.
>
> Although I am sometimes critical of excessively hyper-technical complaints about validation notice compliance, it is clear that the validation notice violations in this case are fairly substantial.
>
> Your other validation notice complaints deal with omissions from the validation notice language. **Not only are portions of the notice omitted, but others are misstated. By omitting the words "in writing" and "any portion thereof" from its explanation of how to dispute the debt, Defendant causes substantial confusion as to how a consumer can properly invoke the Section 1692g rights. This, too, is more than a mere technical violation, and these omissions are substantial.** (emphasis added)[22]

The facts are clear that Crawford's validation notice does not convey two critical aspects of the FDCPA's validation notice, and accordingly, Crawford should be held liable for its

---

[19] See, e.g., Baker v. GC Services Corp., 677 F.2d 775, 778 (9th Cir. 1982); Prevete v. Margolin & Meltzer, 1998 U.S. Dist. LEXIS 10592, *6 (E.D.N.Y. May 19, 1998).

[20] See Baker, 677 F.2d at 778 ("Congress clearly required the notice to inform the debt that he could dispute any portion of the debt.")

[21] Manuel Newburger typically works as a defense attorney and compliance expert for the collection industry.

[22] See Expert Report, attached hereto as Exhibit 3.

6

violations of §1692g. "As the Supreme Court has held in the general context of consumer protection – of which the FDCPA is a part – 'it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'"[23]

### C. Crawford Completely Ignored the Plain Language of the Fair Debt Collection Practices Act

#### 1. Crawford's deceptive notice deletes crucial terms from the FDCPA's §1692g validation provision

Crawford's validation notice is flawed not only because it misses whole sections of the required statutory language but also because it falsely represents what the consumer must do to trigger the Act's protections. Only a <u>written</u> dispute of the debt triggers the collector's duty to provide verification of the debt. Only a <u>written</u> dispute by the consumer means that the debt collector has to stop collection efforts until such verification is provided. Under §1692g(b), "if the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed ... the debt collector shall cease collection of the debt, or any disputed portion thereof..." Accordingly, because Crawford's letter does not advise the consumer that his debt must be disputed in <u>writing</u> before the protections of §1692g(b) become available, it violates §1692g and §1692e.

Section 1692e(10) prohibits debt collectors from using any false representation or deceptive means to collect or attempt to collect a debt. By merely informing recipients of its collection letter to "contact us and dispute the charges owed" and "contact our office upon receipt of this letter to discuss this matter" and providing a toll free number to call, Crawford misrepresents to consumers that an oral dispute is sufficient to compel collectors to cease

---

[23] *Russell*, 74 F.3d at 35, *citing FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965).

7

collection efforts or send verification of the debt.[24] It is not. By using the language it does, the consumer is inevitably <u>misled</u>.[25] Under the plain reading of the FDCPA, a debt collector is under no obligation to provide verification of a debt when the consumer does not request it in writing. As the court stated in *Fasten v. Zager*, upon denying plaintiff's claim that defendant had violated the FDCPA:

> ...defendant correctly notes that, since plaintiff failed to request verification of the debt in writing, as expressly required by the validation notice and Section 1692g(4), defendant was under no legal obligation to provide verification of the debt. Under Section 1692g(4), verification is triggered only by the consumer writing a letter to the debt collector. Here, plaintiff's telephone call to defendant did not constitute such a request for verification. Accordingly, while defendant informed plaintiff when he called that his insurance company had not paid his bill, defendant was under no legal obligation to obtain verification of the debt by contacting the insurance company for a copy of the letter denying plaintiff's claim. Plaintiff's claim under Section 1692(g) is thus without merit.[26]

Because Crawford's collection letter violates §1692g by containing an improper validation notice and misstating what the consumer must do to enforce his or her rights to a verification, the letter is also deceptive under §1692e. By encouraging consumers to make their disputes or requests for information orally, no verifiable proof exists that such a dispute or request was made. The consumer is deceived into giving up a legal remedy.

### 2. Crawford Misrepresents a Shifting of the Burden of Proof under the FDCPA

Under §1692e, Crawford is prohibited from using any false, deceptive or misleading representations in its debt collection efforts. By falsely claiming that "<u>Federal law</u> provides that this debt will be assumed to be valid and owing" Crawford intentionally cloaks its claim as approved by Federal law and erroneously suggests that the FDCPA somehow works to the

---

[24] *See* Am. Compl. at ¶¶ 35-36, 38-41.

[25] *See Farley v. Diversified Collection Services, Inc.*, 1999 U.S. Dist. LEXIS 16174, *10-11 (Plaintiff's motion for summary judgment granted where collection letter violated the FDCPA because it stated the required information about a debtor's rights in a confusing fashion.)

[26] *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. 1999).

detriment of the consumer or that the ordinary due process afforded a consumer is not available.[27] Although the Act <u>confers</u> rights to the consumer, Defendant's statement makes it appear that failure to dispute a debt will, under "Federal law" make the debt "valid and owing."

Although a consumer can chose within thirty days after a debt collector's initial written communication to dispute the validity of the debt or any portion thereof, if the consumer does not dispute the debt, the consumer does not become liable under any Federal Law, nor does the debt become any more "valid and owing" than it was when the initial written communication was sent. While a debt collector, absent a dispute, is allowed to personally assume that the consumer does not dispute the accuracy or amount of the debt, federal law does not make the debt valid in the absence of a dispute. Defendant's statement constitutes a misrepresentation of the legal status of the alleged debts of Plaintiff and the class members, prohibited by §1692e(2)(A) and the catchall provision, §1692e(10).

> As stated in Plaintiff's expert report:
>
>> Not only does the half-baked attempt at a validation notice fail to state the notice correctly and fail to leave out certain of its provisions, but it also contains a <u>fundamental misstatement of the law which is calculated to deceive consumers</u>. The misstatement is that "Federal law provides that this debt will be assumed to be valid and owing." In fact, federal law does not provide anything of the sort...
>>
>> The validation notice, as written, is not only wrong but it attempts to cloak Defendant Crawford with some sort of federal authority or power. This, too, is a serious violation that merits substantial statutory damages.[28](emphasis added)

And McCabe testified in his deposition that he did not understand or know "the full import" of what federal law provided in regard to the debt.[29] In fact, the only statement the Act makes with regard to what happens if the consumer does not dispute the debt is, "The failure of a consumer

---

[27] Normally, it is the burden of those seeking to collect a debt to prove that the debt is owed. In fact, if disputed, under the Fair Debt Collection Practices Act the debt collector must verify the debt to the consumer before recommencing collection action.

[28] *See* Expert Report, attached hereto as Exhibit 3.

[29] Dep. of Terrence McCabe, p. 63, ln. 1-9, attached hereto as Exhibit 4.

9

to dispute the validity of a debt under this section <u>may not</u> be construed by any court as an admission of liability by the consumer."[30] (emphasis added).

Therefore, not only does Crawford's validation notice misrepresent what "federal law provides for," it constitutes a violation of §1692e(2) and e(10).

### D. Crawford's Violation of the FDCPA For the Use of an Improper Validation Notice Gives Rise to a Violation of the Illinois Collection Agency Act

As a collection agency operating in the State of Illinois, Crawford & Company is subject to governance under the Illinois Collection Agency Act, 225 ILCS 425 *et seq.*, a statute designed to prohibit abusive debt collection conduct.[31] Crawford does not dispute that it is a collection agency within the purview of the Act.[32] The ICAA has a broad based remedial catchall provision that states that a collection agency may not engage in any dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud or harm the public. Although this action was filed in federal court, as a claim under the FDCPA exists, consumers in Illinois are also capable of bringing such claims under the state collection law, the ICAA.

All 278 consumers, including McCabe, that Crawford identified as the members of certified Class A, are entitled to judgment in their favor for Crawford's violations of the FDCPA, §1692e and §1692g, which in turn gives rise to liability under the ICAA, 225 ILCS 425/31. As set forth above, Crawford, (1) does not advise consumers of the dispute rights and procedures provided to them by the Act, (2) misrepresents that "federal law" will make the debt "valid and owing," and (3) fails to follow clear precedent on the issue of how to draft a compliant debt collection letter.

---

[30] 15 U.S.C. §1692g(c).

[31] 225 ILCS 425/1a; *See* Statement of Uncontested Facts at ¶ 4.

[32] *See* Statement of Uncontested Facts at ¶ 4.

Crawford's actions caused Plaintiff and the class damage as a result of being faced with its conduct of a character likely to deceive, defraud or harm the public. As a direct and proximate result of being faced with Defendant's deceptive collection letters, members of the class paid Defendant and were thereby damaged.[33] Although McCabe did not pay the Defendant, as a direct and proximate result of being faced with Crawford's letter, McCabe sought legal advice and paid a $750.00 retainer to deal with the collection activity.[34] In his effort to mitigate damage, and under the advice of counsel, he did not pay.[35] Under recent Illinois Appellate Court authority, attorney's fees incurred as a result of a violation of a consumer protection law is considered actual damage.[36] Therefore, both Plaintiff and the class members have been damaged as a direct result of having been sent Defendant's letter

By sending a collection letter filled with false statements regarding how a consumer may trigger the protection of the FDCPA and deceptive representations as to the purpose and effect of the federal fair debt statute, Crawford has violated the tenet of the ICAA that demands honorable, ethical, and professional conduct. Therefore, as the ICAA is a broad based, remedial statute, which covers an even wider spectrum of behavior than that covered under the FDCPA, Plaintiff and the class are entitled to summary judgment under both statutes.

### III. Crawford Sought to Collect an Alleged Debt From McCabe and the Members of Class B, Knowing that It was Seeking to Collect In Direct Contravention of Illinois Law

Despite the fact that Illinois law prohibits seeking to collect any damage to rented motor vehicles before a liquidated amount for such damages has been agreed to (between the consumer

---

[33] See Dep. of Kevin Buhr, p. 99, ln. 11-17, attached to L.R. 56.1 Statement as Exhibit 7. Buhr testified that a percentage of the Budget claims submitted to Crawford were currently in payment plan status. Several others may have settled.

[34] See Dep. of Terrence McCabe, p. 44, ln. 4-7, attached hereto as Exhibit 4.

[35] See Dep. of Terrence McCabe, pg. 65, ln. 20-24, attached hereto as Exhibit 4.

[36] See Jones v. William Buick, Inc., 2003 Ill. App. LEXIS 108, *6-7 (1st Dist. 2003).

11

and the rental company) or determined pursuant to law, Crawford sent collection letters demanding such amounts. McCabe never agreed to pay a set amount and never agreed to liability for or the amount of damage purportedly done to his rental truck.[37] Moreover, no judgment assigning liability for the damage was ever entered against McCabe in a court of law or any other forum that would have determined the collectible damage amount.

Were the above violation not enough, it appears that in Crawford's own internal legal memorandum, (which enumerates exactly what fees it believed could <u>not</u> be legally collected in Illinois),[38] Crawford believed that it was <u>prohibited</u> from collecting for such things as "Loss of Use" or "Administration fees." Despite the warnings of its own legal memorandum (stating "Per Illinois statute you *can not* collect for" certain items) Crawford flagrantly disregarded its own research and demanded payment from consumers for loss of use and administration or collectors' fees (entitled "Crawford's Fee") on the form of the July 10, 2001 collection letter.

For these reasons, Crawford intentionally misrepresented the character and legal status of the alleged debts, in contravention of §§1692e and e(2), and impermissibly sought to collect an unauthorized amount, in contravention of §1692f(1). As Crawford went out of its way to first determine the state of the law, and then violate it, this Court should award judgment as a matter of law for the maximum statutory damages allowed by law.[39]

---

[37] *See* Dep. of Terrence McCabe, p. 60-61, ln. 24, 1-8, attached hereto as Exhibit 4.

[38] *See* Document C00206 discussed in Dep. of Kevin Buhr, p. 78-80, attached to L.R. 56.1 Statement as Exhibit 7.

[39] Based upon a stipulation of the parties, Crawford's net worth at all relevant times exceeded 50 million dollars. *See* Dep. of Kevin Buhr, p. 114, attached to L.R. 56.1 Statement as Exhibit 7.

12

A.   **Preconditions Before Seeking <u>Any</u> Payment for Damages**

The Illinois Vehicle Code section entitled "Limited liability for damage" regulates "when," "if," and "how much" a rental company can seek to collect from consumers for damages allegedly done to rental vehicles.[40] Under Illinois law:

> No rental company shall require a deposit or an advance charge against the credit card of a renter, in any form, for damages to a vehicle which is in the renter's possession, custody, or control. **No rental company shall require <u>any</u> payment for damage to the <u>rental vehicle</u>,** upon the renter's return of the vehicle in a damaged condition, **<u>until after</u> the cost of the damage to the vehicle and liability therefor is agreed to between the rental company and renter or is determined pursuant to law.** (emphasis added)

By virtue of subsection (f) of the statute, the rental industry is estopped from seeking to impose any liability for rental vehicle damages before, (1) an agreement has been reached with the consumer as to the amount of damage and the liability for such damage, or (2) the amount of damage and the liability for such damage has been determined pursuant to law. Crawford tried to collect specific amounts for rental vehicle damages from McCabe and the members of Class B without an agreement or legal determination, in contravention of the Illinois Vehicle Code.[41]

Crawford attempted to collect money from the class in spite of the fact that it appears to have researched the Code, determined that its contemplated actions would violate the Code, and <u>then</u> decided to violate the Code anyway. This is evident from Crawford's own internal memorandum that summarizes for its employees the "Illinois rental cars statute."[42] The prohibited categories of damages are clearly ones that Crawford included in its collection letter to McCabe and the members of Class B.[43]

---

[40]   625 ILCS 5/6-305.2.

[41]   *See* Statement of Uncontested Facts at ¶¶ 26-33.

[42]   *See* Document C00206, attached as Exhibit 5.

[43]   *See* Document C00206, attached as Exhibit 5, and Martin Affidavit, attached as Exhibit 6. *See also* the deposition of Kevin Buhr, p. 78-81, attached to L.R. 56.1 Statement as Exhibit 7.

13

Although Crawford representative Melodie Martin claimed that she personally reviewed McCabe's file in conjunction with the Illinois law and determined that Crawford could attempt to collect the full amount of the alleged debt because the statutory damage cap did not apply, it is equally clear that provision (f) of 625 ILCS 5/6-305.2 applies to <u>all</u> motor vehicles, regardless of the statutory damage cap distinctions. Therefore, Crawford's collection attempts, even as to McCabe's rental truck, were impermissible under FDCPA §§ 1692e, e(2), and f(1).

There is no dispute that Crawford did not reach an agreement or obtain a legal determination as to rental vehicle damage and liability prior to sending its collection letter, in the form represented by Exhibit 4 to Plaintiff's L.R. 56.1 Statement. Neither had Budget. And 625 ILCS 5/6-305.2(f) applies to all rental vehicles as opposed to merely private passenger vehicles. As this Court stated in its memorandum opinion of September 24, 2002, "the Court reads subsections (a)-(d) of §305.2 as applying to private passenger vehicle alone, not to trucks...the protections of subsection (f), however, appear to stand on their own and apply to all rental vehicles."[44] There is no factual dispute as to the following key issues:

(1) McCabe never agreed to the cost of damage to the rental truck;

(2) McCabe never agreed to liability for the amount of damage to the rental truck;

(3) There was no legal determination as to a liquidated amount for damage to McCabe's rental truck; and

(4) There was no legal determination as to liability for damage to McCabe's rental truck.

Crawford admits that it treated the members of Class B in a fashion similar to McCabe, *i.e.*, attempting to collect amounts for damage to rental vehicles without first checking for or obtaining compliance with 625 ILCS 5/6-305.2(f). However, the FDCPA expressly prohibits the collection of amounts in contravention of law and the false representation of the character and

---

[44] *See* Sept. 24, 2002 Order, attached to L.R. 56.1 Statement as Exhibit 3.

14

legal status of a debt.[45] Crawford asserted its right to collect the amounts set forth in the July 10, 2001 letter to McCabe in contravention of Illinois law by falsely representing to McCabe and the members of Class B that it could force payment for damage done to rented vehicles before the statutory pre-conditions under Illinois law were met.

### B. Crawford's Collection Efforts With Regard to McCabe and the Members of Class B Violated the Illinois Collection Agency Act.

The ICAA specifically prohibits collection agencies from "attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist."[46] As set forth above, many of the fees that Crawford sought to collect it believed it was not entitled to.[47] Moreover, as set forth above, Crawford had no legal right to collect any of the amounts it sought to collect from McCabe or the members of Class B without first obtaining an agreement as to the amount of damage or the liability for such damage or a legal determination as to the same. Accordingly, by sending the form of the July 10, 2001 collection letter, Crawford acted in contravention of Section 20 of the ICAA.

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that summary judgment and a finding of liability against Crawford & Company be made on behalf of Plaintiff and the members of Class A and Class B for Crawford's violations of the FDCPA, 15 U.S.C. §1692e, f, and g, and the ICAA, 225 ILCS 425/20 and 31. Based upon an examination of the documents and testimony referenced in this motion, there is no plausible explanation for Crawford's violations, warranting the imposition of the maximum statutory damages allowed under the

---

[45] *See* 15 U.S.C. §1692e(2)(A) and §1692f(1).

[46] 225 ILCS 425/20.

[47] *See* Document C00206, attached as Exhibit 5.

15

FDCPA and disgorgement of any fees illegally obtained through the use of the collection letter at issue. Plaintiff also requests leave to seek payment of his counsel's reasonable fees.

Respectfully submitted,

By: _____
One of Plaintiff's Attorneys

Lance A. Raphael
Stacy M. Bardo
The Consumer Advocacy Center, P.C.
25 East Washington, Suite 1805
Chicago, IL 60602
(312) 782-5808

Aron D. Robinson
Law Office of Aron D. Robinson
19 South LaSalle, Suite 1300
Chicago, IL 60603
(312) 857-9050

SEE CASE FILE FOR EXHIBITS