# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8194 | **DATE** | 7/8/2003 |
| **CASE TITLE** | Terrence McCabe vs. Crawford & Company, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set on 8/5/2003 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [68-1] is granted in part and denied in part. Judgment is entered pursuant to Federal Rule of Civil Procedure 54(b) in favor of Plaintiff class on Count I.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUL 0 9 2003 | date docketed | |
| ✓ | Docketing to mail notices. | | | | 82 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | JUL 0 9 2003 | date mailed notice | |
| RO | courtroom deputy's initials | 03 JUL -8 PM 4:09 | | | |
| | | 010 | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRENCE MCCABE, on behalf of )
himself and all others similarly )
situated, )
              )
          **Plaintiff,** )
              )    **No. 01 C 8194**
      **v.** )
              )    **Judge Ruben Castillo**
CRAWFORD & COMPANY, BUDGET )
GROUP, INC., and BUDGET RENT A )
CAR, INC., )
              )
      **Defendants.** )

**DOCKETED**

**JUL 0 9 2003**

## MEMORANDUM OPINION AND ORDER

Terrence McCabe filed this class action suit against Crawford & Company

("Crawford") alleging violations of the Fair Debt Collection Practices Act ("FDCPA" or

"Act"), 15 U.S.C. § 1692 *et seq.*, (Counts I and II), and the Illinois Collection Agency Act

("ICAA"), 225 ILCS 425 *et seq.*, (Count IV). Currently before the Court is McCabe's

motion for summary judgment on all remaining counts pursuant to Federal Rule of Civil

Procedure 56(c). For the following reasons, the Court grants in part and denies in part

McCabe's motion for summary judgment on Count I. (R. 68-1.) In addition, the Court

grants summary judgment to Crawford on Counts II and IV.[1] Crawford's motion to exclude

testimony of Manuel Newburger is denied in part and granted in part. (R. 74-1.)

---

[1] Although Crawford did not file a cross-motion for summary judgment, the Court has the
authority to *sua sponte* grant summary judgment to the non-moving party. *See Celotex Corp.
v. Catrett*, 477 U.S. 317, 326 (1986) (stating that "district courts are widely acknowledged to
possess the power to enter summary judgments *sua sponte*"); *Sawyer v. United States*, 831
F.2d 755, 759 (7th Cir. 1987); *Dayton Elec. Mfg. Co. v. Apcom, Inc.*, 782 F. Supp. 389, 393-
95 (N.D. Ill. 1992).



1

# RELEVANT FACTS

The relevant facts of this case are straightforward. In November 1997 McCabe rented a truck from Budget Rent A Car ("Budget"). Subsequently, McCabe accidentally damaged the truck, resulting in an alleged debt between McCabe and Budget. In June or July 2001, Budget submitted the alleged debt to Crawford, a collection agency. Soon after, Crawford, in an attempt to collect the alleged debt, sent McCabe a collection letter. The letter contained the total balance due, along with a breakdown of the damages.[2]

The collection letter also contained the following paragraph, which is the subject of the current controversy before the Court:

> Unless we hear from you within thirty (30) days after the receipt of this letter disputing this claim, Federal Law provides that this debt will be assumed to be valid and owing. In the event you contact us and dispute the charges owed, we will promptly furnish you with any and all documentation to substantiate the claim.

McCabe alleged in his seven-count amended complaint that this letter, and others like it, violated the FDCPA and the ICAA. Crawford filed a motion to dismiss, which we granted in part on September 24, 2002, leaving only Counts I, II, and IV intact. The Court also certified Classes A and B.[3] Counts I and II allege various violations of the FDCPA and Count IV alleges violations of the ICAA. Specifically, McCabe asserts that Crawford's letters to Class A members failed to apprise them of their rights under the FDCPA, which also allegedly violates the ICAA. In addition, McCabe claims that Crawford's letters to

---

[2] The letter listed the total balance due as $12,266.67, comprised of physical damage in the amount of $6,347.78, loss of use at $1,680, and Crawford's fee at $4,088.89.

[3] Members of Class A are those consumers nationally who received a collection letter from Crawford that was substantially similar or identical to the letter McCabe received. Members of Class B are those consumers nationally who rented a vehicle from a car rental company in Illinois and who received a collection letter from Crawford attempting to collect amounts for alleged damages done to the rental vehicle before the car rental company did any of the following: (1) obtained an estimate or appraisal on the damages, (2) reached an agreement with the renter as to the damages due or (3) obtained a legal determination as to the damages due.

Class B members attempted to collect a debt without first complying with the Illinois Vehicle Code ("Code"), 625 ILCS 5/6-305.2, also in violation of the FDCPA.[4]

Currently before the Court is Plaintiff's motion for summary judgment pursuant to Rule 56(c) and Defendant's motion to exclude the expert testimony and report of Manuel Newburger.

## A. Motion to Exclude Expert Testimony and Report

We first address Crawford's motion to exclude the testimony and report of McCabe's expert witness Manuel Newburger. For the reasons set forth below, the Court grants Crawford's motion to exclude Mr. Newburger's expert report, but denies the motion to exclude Mr. Newburger's expert testimony. Mr. Newburger will be allowed to testify at trial regarding the narrow issue of practices and standards in the collection agency industry.

Mr. Newburger is a law professor at the University of Texas School of Law. He currently teaches consumer law and has practiced in that field for 20 years, representing both collection agencies and debtors. Mr. Newburger has published numerous articles and books on the FDCPA and often advises collection agencies on how to comply with the Act. There is little doubt that Mr. Newburger is accomplished in his field and is familiar with the FDCPA and its case law.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.[5] Expert testimony must be both relevant and reliable to be admitted. *Daubert v.*

_____

[4] According to Crawford's records and for purposes of the alleged FDCPA violations, Class A consists of 278 consumers who received a letter from Crawford that was substantially similar or identical to the letter McCabe received and who met the statute of limitations. Class B is comprised of 19 consumers. It appears from the record that for the purposes of the FDCPA violations, all members of Class B are also members of Class A.
[5] Rule 702 reads as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an

*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). It may be based upon the personal knowledge or experience of the expert. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The key to evaluating expert testimony that is based on the expert's personal experience is determining whether the expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. Because expert testimony can be powerful and misleading, judges must act as gatekeepers and exclude expert testimony where the possible prejudice of the testimony outweighs its probative force. *Daubert*, 509 U.S. at 595. In addition, the Federal Rules of Evidence prohibit experts from offering opinions or legal conclusions on issues that will determine the outcome of the case. *See Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994); *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 366-367 (7th Cir. 1990).

Crawford contends that Mr. Newburger's testimony and report are filled with legal conclusions and lack any objective or reliable methodologies. Particularly, Crawford takes exception to Mr. Newburger's approach of dividing violations of the FDCPA into technical and substantive violations. McCabe responds that Rule 702 is extremely flexible and that the testimony of Mr. Newburger should be allowed because he is well qualified to testify on the industry standards and practices of collection agencies.

In theory, we agree with McCabe's position that Mr. Newburger is qualified to testify regarding collection agency standards and practices. Unfortunately, in practice, Mr. Newburger fails to limit himself to this subject. Crawford correctly asserts that Mr. Newburger's report is filled with legal conclusions and inappropriate opinions. While Mr. Newburger prefaces his report with his intent not to offer opinions on issues of law, his report does just that.

---

opinion or otherwise. Fed. R. Evid. 702.

First, Mr. Newburger divides FDCPA violations into technical and substantive violations explaining that technical violations are those "which [are] not strictly compliant with the FDCPA, but which [are] not likely to abuse or coerce consumers in the traditional sense." (R. 66, Pl's. Mem., Ex. 3-1.) Mr. Newburger, however, may not expound on what complies and does not comply with the FDCPA; these are inappropriate legal conclusions. In addition, Mr. Newburger is not an expert on how consumers will interpret or react to certain language in the collection letters. *See Holt v. Wexler*, No. 98 C 7285, 2002 WL 475181, at *3 (N.D. Ill. Mar. 28, 2002) (striking part of expert testimony that related to consumer confusion because expert had no expertise in FDCPA and had not performed any research on consumers).

Furthermore, Mr. Newburger offers no support for his conclusions other than his *ipse dixit* testimony. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (citation omitted). Especially improper are Mr. Newburger's declarations on how much or what percentage of statutory damages is required for the combined violations. Again, Mr. Newburger offers nothing to support these declarations other than his own legal conclusions. In short, the report greatly exceeds the scope of Mr. Newburger's proper testimony.

We emphasize that it is the fact finder's responsibility to examine each of the FDCPA's factors to determine the amount of damages on statutory liability.[6] 15 U.S.C. § 1692k(c). Mr. Newburger's appropriate testimony with respect to collection agency

_____

[6] The factors listed in 1692k(c) are: (1) the frequency and persistence of noncompliance by the debt collector, (2) the nature of such noncompliance, (3) the resources of the debt collector, (4) the number of persons adversely affected, and (5) the extent to which the debt collector's noncompliance was intentional. 15 U.S.C. § 1692k.

standards and practices will aid the fact finder in examining two of the FDCPA four factors: the nature of the noncompliance and the extent to which the noncompliance was intentional. It is inappropriate, however, for Mr. Newburger to make legal conclusions regarding any of the four factors or to opine on the seriousness of the violations or the amount of damages. This responsibility lies solely with the fact finder.

In summary, we believe that Mr. Newburger may offer something of value in regards to industry standards and practices; however, he must limit himself to this topic and avoid legal conclusions and *ipse dixit* testimony. As it stands, there is nothing of value for the Court in Mr. Newburger's report at this juncture and, therefore, Crawford's motion to exclude the report is granted. Because Mr. Newburger may have relevant testimony regarding industry standards and practices, however, we deny Crawford's motion to exclude Mr. Newburger as a witness. We emphasize, however, that Mr. Newburger's testimony must strictly conform with this Court's opinion in order to be admitted at trial. In addition, if McCabe intends on using Mr. Newburger at trial, he should submit another expert report that complies with Rule 26(a)(2) of the Federal Rules of Civil Procedure. We also stress that Mr. Newburger's report and deposition have not been used in any way in reaching our decision on summary judgment.

## LEGAL STANDARDS

Summary judgment is proper when the record shows no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court ruling on a summary judgment motion must view the

evidence, and all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv. Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). However, the mere existence of an alleged factual dispute is not sufficient to defeat a motion for summary judgment. *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). If there are no material facts in dispute, the court may *sua sponte* grant summary judgment to the nonmoving party if the outcome is clear and the opposing party has had an opportunity to respond. *See Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir. 1987); *Coach Leatherware Co. v. AnnTaylor Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

## ANALYSIS

### A. The FDCPA

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors" and to insure that debt collectors who refrain from abusive collection practices are not competitively disadvantaged. 15 U.S.C. § 1692(e). To this end, the Act sets certain standards for debt collectors' communications with debtors. Among them is a requirement that debt collectors advise debtors of their rights to dispute the debt and demand verification, *see* 15 U.S.C. § 1692g, a prohibition against false and misleading representations in collection letters, *see* 15 U.S.C. § 1692e, and a ban on attempting to collect any amount that is not "expressly authorized by the agreement creating the debt or permitted by law," *see* 15 U.S.C. § 1692f(1).

The Seventh Circuit evaluates communications from debt collectors "through the eyes of the unsophisticated consumer." *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483-84 (7th Cir. 1997) (citation omitted); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). The unsophisticated consumer is a hypothetical consumer whose reasonable perceptions are used

to determine if collection messages are deceptive or misleading. *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). This standard presumes a level of sophistication that "is low, close to the bottom of the sophistication meter," *Avila*, 84 F.3d at 226, and "protects the consumer who is 'uninformed, naive, or trusting,'" *Jang*, 122 F.3d at 483-84 (citing *Gammon*, 27 F.3d at 1257). Still, the standard "admits an objective element of reasonableness," which "protects debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Gammon*, 27 F.3d at 1257. According to the unsophisticated consumer standard, a letter will not be misleading or confusing unless a significant fraction of the population would also be misled. *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (citation omitted). In light of this standard, we examine whether judgment can be rendered as a matter of law on any of the counts.

## 1. Count One

In Count I, McCabe alleges violations of 15 U.S.C. §§ 1692e(2), 1692e(10) and 1692g(a)(4). Specifically, McCabe asserts that Crawford violated § 1692g(a)(4) by failing to inform Class A members of certain rights they had under the FDCPA and that Crawford violated §§ 1692e(2) and 1692e(10) by misleading them that federal law would assume the alleged debts to be valid and owing if not disputed within thirty days.

### a. 1692g Claims

In carrying out the FDCPA's stated purpose of preventing abusive debt collection practices, Congress provided that debt collectors must send debtors a "validation notice" containing certain information concerning consumers' rights under the Act. 15 U.S.C. § 1692g. The validation notice must inform the consumer that if he notifies the debt collector

in writing that the debt, or any portion of it, is disputed, the debt collector must obtain verification of the debt and send it to the consumer.[7] 15 U.S.C. § 1692g(a)(4). However, even if all the required information is contained in the validation notice, the debt collector may nevertheless violate the Act if the notice is overshadowed or contradicted by accompanying messages. *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 518 (7th Cir. 1997).

McCabe alleges that Crawford's letter violates § 1692g(a)(4) in two ways. First, Crawford's letter does not notify the debtor that he must dispute the debt in writing. By stating "unless we hear from you" and "in the event you contact us," McCabe asserts that the debtor is led to believe that he should call Crawford rather than write, which leads the debtor to forego his rights under § 1692g(b) since they are only triggered upon the receipt of a written document disputing the debt. Crawford responds that even if the letter "technically" violates the Act by omitting the words "in writing," it honors the spirit of the Act because Crawford is willing to provide verification of the debt even if the debtor only notifies Crawford orally that the debt is disputed. Crawford submits that by allowing the debtor to give either written or oral notification, it has gone above and beyond its duty under §1692g(a).

We do not agree that Crawford fulfilled its duty under the FDCPA and hold that omitting the words "in writing" was a violation of § 1692g(a). The debt collector in *Grief*

---

[7] The relevant provisions are found at 15 U.S.C. § 1692g(a):
(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
 (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

made a similar argument when the words "in writing" were omitted from the validation notice, contending that he was prepared to give the required rights to consumers upon either written or oral notification. *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d 336, 340 (E.D.N.Y. 2002). The court rejected this argument stating that because the FDCPA is a strict liability statute,[8] the intentions of the debt collector were irrelevant and, therefore, failure to provide the required information was a violation of the Act. *Grief*, 217 F. Supp. 2d at 340. We agree.

Although the Seventh Circuit has not yet squarely addressed a case where information required by the FDCPA was omitted, circuit case law strongly implies that failure to provide the required information is a violation of the FDCPA. *See Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) (stating that certain information required by the Act must be contained in the validation notice and that the information must not be conveyed in a confusing manner); *Chauncey*, 118 F.3d at 518 (stating that even if the required information is properly included, there could still be a violation if that information is overshadowed or contradicted). In addition, the plain language of the FDCPA itself prevents us from adopting Crawford's argument. Section 1692g(a) dictates that the debt collector shall send the consumer a written notice stating that upon *written* notification of a dispute, verification *must* be provided by the debt collector. 15 U.S.C. § 1692g(a)(4). Crawford correctly asserts that § 1692g(a)(4) does not expressly prevent the debt collector from providing verification of the

[8] Crawford does not contest that the FDCPA is a strict liability statute. Although the Seventh Circuit has never explicitly held so, it has implicitly assumed as much in its opinions. *See Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (holding that § 1692e applies even when a false representation was unintentional); *Gammon*, 27 F.3d at 1258 (stating that § 1692e(1) does not require subjective intent for a violation). The FDCPA itself supports the idea of strict liability since if intent was needed for a violation of the statute, the bona fide error defense in 15 U.S.C. 1692k(c) would be meaningless. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33-34 (2d Cir. 1996) (stating that the FDCPA is a strict liability statute and pointing to the bona fide error defense for conduct that is unintentional).

debt upon *oral* notification of the dispute. However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification.[9] If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt. *See Fasten v. Zager* 49 F. Supp. 2d 144, 149 (E.D.N.Y. 1999) (holding that the debt collector was not required to obtain verification upon oral notification of the dispute). Thus, by omitting the words "in writing," Crawford did not effectively convey to the consumer his rights under the FDCPA and thus violated the Act. *See Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (stating that a "debt collector violates the Act if it fails to convey the information required by the Act").

For the above reasons, we also hold that Crawford's failure to specify that any portion of the debt may be disputed also is a violation of the FDCPA. As articulated above, the Seventh Circuit has stated implicitly that information required by the FDCPA must be in the validation notice. *See Avila*, 84 F.3d at 226 (stating that the notice required by § 1692g must inform the target that she has 30 days to dispute the validity of all or a portion of the debt). Crawford contends, however, that by providing a breakdown of the debt and by referring to "this claim," the letter logically implies that any portion may be disputed. In support, Crawford cites a case where the court held that a collection letter stating, "all

---

[9] Crawford argues that § 1692g(a)(3) does not require that a consumer dispute the debt in writing. The Court recognizes that courts disagree as to whether § 1692g(a)(3) has an implied writing requirement. *Compare Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (holding that § 1692g(a)(3) has an implicit writing requirement), *with Spearman v. Tom Wood*, IP 00-1340-C-T/K, 2002 WL 31854892, at *7 (S.D. Ind. 2002) (holding that § 1692g(a)(3) does not require the dispute to be in writing). Although the Seventh Circuit has not squarely adopted either position, it is not relevant to this controversy. McCabe has alleged a violation of § 1692g(a)(4), which explicitly requires that the dispute notification be in writing. Therefore, whether or not § 1692g(a)(3) implies a writing requirement is irrelevant.

portions of this claim shall be assumed valid unless disputed within thirty days," implied that the claim could be wholly or partially disputed. *Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992).

We feel that a more analogous case, however, is a Ninth Circuit case where the court held that the debt collector violated the FDCPA by not stating in the validation notice that any portion of the debt could be disputed. *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982). We agree with the Ninth Circuit that failing to explicitly inform the debtor that any portion of the debt may be disputed is a violation of the FDCPA. In construing a statute, we are obligated to give effect, if possible, to every word Congress used in the statute. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citation omitted). Congress clearly felt that the words "any portion" were needed in the validation notice to inform the debtor of his rights or it would not have required the words to be put in the notice.

In addition, we believe that the letter in *Transworld Systems, Inc.* is distinguishable from Crawford's letter. In that case, by including language that "all portions" of the debt will be assumed valid unless disputed, the debtor will likely know that this includes the right to dispute any portion of the debt. Merely breaking down the debt with a total balance due and stating that "this debt" will be assumed valid, as in Crawford's letter, is not nearly as clear in informing the debtor that any portion of the debt may be disputed. To the degree that the Sixth and Ninth Circuits are in conflict regarding this issue, if they are at all, we concur with the Ninth Circuit, and hold that omitting language informing the debtor that any portion of the debt may be disputed is a violation of the FDCPA.

In finding that Crawford's letter violated § 1692g(a)(4) by omitting the words "in writing" and "any portion," we remind Crawford of the guidance in § 1692g(a)(4) as well as

the model letter for debt collectors provided by the Seventh Circuit. *Bartlett*, 128 F.3d at 501-02. In *Bartlett*, the Seventh Circuit cautioned that if debt collectors chose to depart from the model's safe harbor, they did so at their own risk. *Id.* at 502. In this case, by departing from the model letter and the plain requirements of the FDCPA, Crawford left the safe harbor provided by the Seventh Circuit and Congress and violated the FDCPA.

### b. 1692e Claims[10]

McCabe next alleges that Crawford violated 15 U.S.C. §§ 1692e(2)(A) and 1692e(10) by stating in the collection letter that unless the debtor contacts Crawford within thirty days, "Federal Law provides that this debt will be assumed to be valid and owing." Section 1692e(2)(A) prohibits "[t]he false representation of the character, amount, or legal status of any debt" while § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." McCabe argues that Crawford's statement is misleading because the consumer will believe that the debt is a valid one for which they are liable under federal law if it is not disputed within thirty days. As McCabe correctly points out, § 1692g(a)(3) provides only that the *debt collector* may assume the debt to be valid. Furthermore, § 1692g(c) explicitly states that "[t]he failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."

---

[10] Initially, McCabe also alleged in his complaint a violation of 15 U.S.C. § 1692e(5), which prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken." However, McCabe never identifies how Crawford's letter violated this provision and the violation is never mentioned in McCabe's summary judgment motions or supporting memoranda. Because this Court is not obligated to address claims that are not developed or supported, we decline to address this alleged violation. *See Veillard v. Mednick*, 24 F. Supp. 2d 863, 868 n.2 (N.D. Ill. 1998); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140 n.15 (N.D. Ill. 1998).

The relevant inquiry is whether the unsophisticated consumer would be misled into believing that if the debt is not disputed within 30 days, federal law, rather than just the debt collector, will assume the debt to be valid and owing. *See Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999). An initial question we confront is whether summary judgment is appropriate where McCabe provides no evidence showing that consumers were actually confused by the language. McCabe's sole evidence is the language of the letter.

In recent years, the Seventh Circuit has emphasized that evidence, such as consumer surveys similar to ones used in trademark cases, may be needed to show that a collection letter is confusing to the unsophisticated consumer. *See Gammon*, 27 F.3d at 1259. (concurrence stating that plaintiff would need to show that a significant portion of the relevant population would have been confused by the collection letter). Evidence of how the unsophisticated consumer interprets certain language may be needed because what is "pellucid to a judge . . . may be opaque to someone whose formal education ended after sixth grade." *Johnson*, 169 F.3d at 1060. The Seventh Circuit has further stressed that whether a letter is confusing to the unsophisticated consumer is a question of fact and not of law or logic. *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999). The overall message appears to be that on a defendant's motion for summary judgment, if all a plaintiff has to go on is the language of the collection letter, he ultimately must lose. *Johnson*, 169 F.3d at 1060.

Prior to these cases, however, the Seventh Circuit held that a collection letter alone, without additional evidence such as consumer surveys, could support summary judgment. *See, e.g., Avila*, 84 F.3d at 226-227 (holding as a matter of law that a collection letter violated the FDCPA despite lack of evidence of actual consumer confusion); *Chauncey*, 118

14

F.3d at 519. Subsequent district courts have reconciled *Johnson* with prior holdings in cases like *Avila* by reasoning that if a collection letter violates the FDCPA on its face, then no survey evidence is needed to decide the issue as a matter of law. *See Holt*, 2002 WL 475181, at *8; *Smith v. Short Term Loans, L.L.C.*, No. 99 C 1288, 2001 WL 127303, at *10 (N.D. Ill. Feb. 14, 2001). However, if the collection letter is not confusing on its face, but may be confusing to those who read it, then summary judgment is inappropriate to decide the issue. *Holt*, 2002 WL 475181, at *8; *See also Matthews v. First Revenue Assurance, L.L.C.*, No. 00 C 3711, 2001 WL 864272, at *3 (N.D. Ill. July 31, 2001). We agree that if a collection letter is confusing on its face, (for example, where the language of the letter is clearly contradictory or inconsistent), the matter may be decided on summary judgment without additional evidence. *See Matthews*, 2001 WL 864272, at *3. Where the letter is only potentially misleading or confusing, however, the plaintiff must submit evidence of actual consumer confusion before summary judgment may be granted.[11] *Id.*

Examining Crawford's letter, we cannot say as a matter of law that the language "Federal Law provides that this debt will be assumed to be valid and owing" is confusing on its face. The language used may indeed be misleading and confusing to the unsophisticated consumer and might be a case where "[t]he language in the collection letter appears to be cleverly drafted in order to insinuate what obviously cannot be stated directly." *Gammon*, 27 F.3d at 1258. If Crawford had simply added the words "by us" to the end of the phrase to read "Federal Law provides that this debt will be assumed to be valid and owing *by us*," the message would be much clearer.

---

[11]  As can be surmised by our holding that Crawford's letter violated § 1692g(4) by omitting the words "in writing" and "any portion," the Court found that the letter on its face violated the FDCPA. One need only look at the letter to see that the FDCPA's required language was missing and thus, as a matter of law, violated the statute. *See Avila*, 84 F.3d at 227.

While we can readily say that this language in Crawford's letter was poorly drafted, we cannot hold that a significant fraction of recipients would have been misled that federal law would assume the debt was valid and owing if not disputed. *See Gammon*, 27 F. 3d at 1260 (Easterbrook, J., concurring). Thus, because neither McCabe nor Crawford have submitted any additional evidence regarding whether this language would actually confuse the unsophisticated consumer, summary judgment is not appropriate for either party.

### 2. Count Two

In Count II of McCabe's amended complaint, he alleges that Crawford violated §§ 1692(e), 1692e(2) and 1692f(1) of the FDCPA by misrepresenting the character, amount or legal status of the alleged debts. Specifically, McCabe alleges that Crawford attempted to collect a debt before complying with all of the requirements of the Illinois Vehicle Code ("the Code"), 625 ILCS 5/6-305.2.[12] McCabe alleges that because Crawford failed to reach

---

[12] The relevant sections of the Illinois Vehicle Code read as follows:

§ 6-305.2 Limited liability for damage.

(a) Damage to private passenger vehicle. A person who rents a motor vehicle to another may hold the renter liable to the extent permitted under subsections (b) through (d) for physical or mechanical damage to the rented motor vehicle that occurs during the time the motor vehicle is under the rental agreement.

\*      \*      \*

(d) Repair estimates. A person who rents a motor vehicle to another may not collect or attempt to collect the amount described in subsection (b) unless the rental company obtains an estimate from a repair company or an appraiser in the business of providing such appraisals on the costs of repairing the motor vehicle, makes a copy of the estimate available upon request to the renter who may be liable under subsection (a), or the insurer of the renter, and submits a copy of the estimate with any claim to collect the amount described in subsection (b).

\*      \*      \*

(f) No rental company shall require a deposit or an advance charge against the credit card of a renter, in any form, for damages to a vehicle which is in the renter's possession, custody, or control. No rental company shall require any payment for damage to the rental vehicle, upon the renter's return of the vehicle in a damaged condition, until after the cost of the damage to the vehicle and liability therefor is agreed to between the rental company and renter or is determined pursuant to law.

an agreement as to damages or to obtain a determination of the damages pursuant to law, Crawford violated the FDCPA. Both parties agree that there was no agreement reached, so the sole disagreement is over the interpretation of "pursuant to law." McCabe argues that pursuant to law means that a court must enter a finding as to the damages. Crawford responds that pursuant to law merely refers to the requirement in § 6-305.2(d) that the rental company must obtain an estimate of the damages and make it available to the renter. For the reasons set forth below, we hold that the requirement in § 6-305.2(d) is a precondition to § 6-305.2(f) and that all of § 6-305.2, including § 6-305.2(f), excludes trucks and applies only to rental cars.

In interpreting a statute, "all statutory interpretation begins with the language of the statute itself, and where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Pittway Corp. v. United States,* 102 F.3d 932, 934 (7th Cir. 1996) (quotations and citations omitted). Moreover, a court should "assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quotations and citations omitted). As we have noted, if a statute is silent or ambiguous with respect to the specific issue, the court must determine whether the proposed interpretation of the statute or ordinance is reasonable. *See Am. Soc'y of Cataract v. Shalala*, 94 F. Supp. 2d 914, 924 (N.D. Ill. 2000). Yet, where the statutory language is unambiguous and its literal interpretation would not lead to an absurd result or thwart the purpose of the overall statutory scheme, we need not look beyond the express language of that statute. *See United States v. On Leong Chinese Merchs. Ass'n. Bldg.*, 918 F.2d 1289, 1297 (7th Cir. 1990). Most importantly, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *In re*

*Lifschultz Fast Freight Corp.*, 63 F.2d 621, 628 (7th Cir. 1995) (quotations and citations omitted).

In our prior order ruling on Crawford's motion to dismiss, we held that § 6-305.2(a)-(d) applied only to private passenger vehicles, and not to trucks. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 641 (N.D. Ill. 2002). We reached this conclusion by examining the language of the statute and the legislative history of this section of the Code. *Id.* at 641-42. We found that Illinois courts interpret private passenger vehicles to exclude trucks, and therefore, to give meaning to the title of § 6-305.2(a), "Damage to private passenger vehicle," we concluded that at a minimum § 6-305.2(a)-(d) excluded trucks. *Id.* The legislative history supported this conclusion because in repealing the $200.00 limited liability for negligent renters and replacing it with § 305.2, the legislators repeatedly referred to "rental cars" and focused on the negative effect of the $200.00 limit on the tourism and travel industry. *Id.* at 642.

Although we did not dismiss McCabe's claim under § 6-305.2(f), we left open the question of how the subsection should be interpreted in conjunction with the rest of the statute. We now conclude that all of § 6-305.2, including (f), applies only to private passenger vehicles, not trucks. This interpretation is the most reasonable in light of the language of the Code and the legislative history. Because our holding that § 6-305.2(d) is a precondition to § 6-305.2(f) is important to our conclusion that § 6-305.2(f) applies only to rental cars and not to trucks, we first explain why we interpret § 6-305.2(d) to be a precondition to § 6-305.2(f).

Crawford argues that interpreting § 6-305.2(d) as a precondition to § 6-305.2(f) is unreasonable because requiring the rental company to reach an agreement on damages or a

determination by a court would render § 6-305.2(d) meaningless. Presumably, Crawford infers that the legislature could not have intended to require both (1) an estimate and (2) an agreement or finding by a court because if the rental company must already obtain an agreement or court finding, it would be pointless to also require an estimate. We disagree.

While at first glance it might appear unreasonable for the Illinois legislature to require both an estimate and an agreement or court finding, there is merit to the requirement. If the renter and rental company attempt to reach an agreement on the damages, an estimate of the damages from an outside appraiser acts as both a protection to the renter and as a foundation for the agreement. If an agreement cannot be reached and the rental company proceeds to court, the estimate may assist the court in determining the appropriate damages. In either case, requiring the rental company to obtain an estimate of the damages and to make it available to the renter acts as a protection and an aid in resolving the matter. Thus, the requirements in § 6-305.2(d) and § 6-305.2(f) are not in conflict under this interpretation.

Crawford also argues that the legislature could not have intended to require the rental company to reach an agreement regarding damages with the renter or obtain a court finding because it would be an unreasonable burden on the rental company, presumably because renters will not voluntarily reach an agreement to pay damages. We, however, do not find that these requirements would place an unreasonable burden on car rental companies. In most cases, renters likely will rather reach an agreement with the rental company than face a judge. This is especially true if the renter is at fault for the damages and the rental company has obtained a fair estimate from an outside appraiser. If the rental company must go to court, the matter will likely be addressed in small claims court where time and expense are comparatively less. Hence, the most reasonable interpretation is that the legislature intended

to require the rental company to fulfill the requirements found in both § 6-305.2(d) and § 6-305.2(f).

Having concluded that § 6-305.2(d) is a precondition to § 6-305.2(f), we can now explain why § 6-305.2(f) applies only to cars and not trucks. If we accepted McCabe's interpretation that the precondition of obtaining an estimate in § 6-305.2(d) applies only to rental cars and not trucks, while § 6-305.2(f) applies to both cars and trucks, we would have to distinguish why the legislature would require an estimate for a private passenger car, but not a truck. We see no reason for this distinction. To say that those who rent trucks need less protection than those who rent cars is not persuasive. The inference is that those who rent moving trucks do not need an estimate because they are more sophisticated than those who rent private passenger vehicles. Thus those who rent trucks would not need an estimate for their protection. We fail to see, however, how those who rent moving trucks are any more sophisticated and hence in need of less protection in rental transactions than those who rent cars.

Further, there is nothing in the legislative history or statute to suggest that the statute was meant to apply to trucks at all. As explained above, in amending the statute, the legislature was primarily concerned with tourists and business travelers, who usually rent cars, not trucks. In addition, Illinois courts have interpreted private passenger vehicles to exclude trucks, *Alamo Rent A Car, Inc. v. Ryan*, 643 N.E.2d 1345, 1353 (Ill. App. Ct. 1994) (Murray, J., dissenting), and the first section of the Code is titled "private passenger vehicle." 625 ILCS 5/6-305.2(a). There is nothing in the remainder of the statute that evinces any intent to apply the statute to both passenger vehicles and trucks rather than only private

passenger vehicles. The most reasonable interpretation then is that the entire section was meant only to apply to private passenger vehicles.

In concluding that § 6-305.2 does not apply to trucks, Class B no longer has a claim under the FDCPA since the Code requirements do not apply to rental trucks. Therefore, summary judgment is granted to Crawford on Count II of the amended complaint.

### 3. Affirmative Defenses

Having found that Crawford's collection letter violates the FDCPA, we now turn to whether Crawford has any valid affirmative defenses that preclude liability. Crawford asserts three affirmative defenses, none of which are argued successfully, persuasively or even wholeheartedly. The first defense that Crawford proffers is that the doctrine of unclean hands bars any recovery by McCabe. Crawford asserts that McCabe is trying to avoid a valid debt that he owes by bringing this litigation. Crawford's assertion is curious since the present litigation has no bearing on whether McCabe owes a valid debt. The issue in the present case is whether Crawford's letter violates the FDCPA. Whatever McCabe's intentions might have been in bringing this lawsuit, they are irrelevant in determining whether Crawford is liable for violating the FDCPA. *See Keele v. Wexler*, 149 F.3d 589, 591-96 (7th Cir. 1998). The doctrine of unclean hands is not applicable to the current case.

Crawford next alleges that if there was a violation, Crawford should not be liable because its conduct falls under the FDCPA's bona fide error defense. The bona fide error defense is found under § 1692k(c) of the FDCPA and reads:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error nothwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Some courts have held that the bona fide error defense applies only to clerical or factual

errors. *See Nielsen v. Dickerson*, 307 F.3d 623, 640 (7th Cir. 2002) (collecting cases). A

minority of courts have held that the bona fide error also applies to mistakes of law. *Id.*

The Seventh Circuit has not definitively addressed whether a mistake of law qualifies

as a bona fide error under the Act. *Id.* However, we need not decide this issue because

Crawford fails to show by a preponderance of the evidence that the violations were mistakes

of law or that they were unintentional. The only element of the bona fide error defense that

Crawford appears to even address is that there were procedures in place to avoid error. To

support this, Crawford generally asserts, without specific citations, that the procedures were

explored in detail during the deposition of a Crawford employee. However, because

Crawford did have a compliance manual that gave instructions on complying with the

FDCPA, we assume for our purposes that this manual was adequate.

Assuming that Crawford's compliance manual was adequate and that a mistake of

law could qualify as a bona fide error, we see no evidence that Crawford misunderstood the

law or that the error was unintentional. Crawford's own manual provides a compliance

checklist to check for possible FDCPA violations. The first two questions ask if the

language of the validation notice is contained in the letter. (R. 66, Pl.'s Mem., Ex. 1 at 25).

There are also instructions not to change any of the language of the validation notice. (*Id.*

Ex. 1 at 7). Finally, a letter from the American Collectors Association includes instructions

to track, verbatim, the language required by the FDCPA. (R. 78, Pl.'s Reply Mem. Ex. D.)

Thus, it seems highly unlikely that Crawford could have made a mistake of law with respect

to the language of the validation notice. Crawford's own compliance manual stressed the

need to follow the notice language precisely and without change.

Crawford's "error" clearly does not qualify as a mistake of law nor has Crawford attempted to identify any other type of error that may have occurred. Crawford is not able to show by a preponderance of the evidence that the omission of the required language was the result of a bona fide error or that it was unintentional. Thus Crawford's second affirmative defense fails.

Crawford's last defense consists of one-line argument that McCabe's claims are moot because Crawford made an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure.[13] Because Crawford fails to inform of us of the terms of his offer, we cannot know whether Crawford offered full relief to McCabe. Regardless, even if Crawford offered McCabe the full relief he was entitled to, offers of judgments are inappropriate in class action suits. *See Greisz v. Household Bank (Ill.) N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) (stating that when an offer is made while class certification is being sought, it is not an offer for the entire relief of the suit). The offer must come either before class certification is sought or after class certification is denied. *Id.* In this case, the offer came on March 22, 2002, after the filing of the amended class action complaint on March 15, 2002. A motion for class certification related to the initial complaint was still pending at the time the offer was made, and it was clear from the amended complaint that the plaintiff was seeking class certification. Thus, the offer of judgment did not moot McCabe's claims because the

---

[13] Rule 68 allows a defendant to make an offer to allow judgment against the party for a specified amount of money or property, with costs of the lawsuit then accrued. Fed. R. Civ. P. 68. If the offer is rejected and the ultimate judgment is less than what was offered, the party who rejected the offer must pay the costs incurred after the offer was made. *Id.* In addition, if the offer is for a judgment for the full relief the plaintiff is entitled to, then the plaintiff's claim is moot and there is no longer a controversy before the court. *See Greisz*, 176 F.3d at 1015.

plaintiff was seeking class certification when the offer was made on March 22. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 204 F.R.D. 113, 114 (N.D. Ill. 2001).

Having addressed all three of Crawford's affirmative defenses and finding all of them unsuccessful, we find that Crawford is liable for two violations of the FDCPA, both under § 1692g(a)(4).

## B. ICAA Claim

Finally, McCabe asserts that Crawford violated the Illinois Collection Agency Act ("ICAA"). Specifically, McCabe asserts that Crawford's letters to Class A members violate 225 ILCS 425/9(31) for the same reasons the letters violated the FDCPA.[14] This provision of the ICAA prohibits "[e]ngaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public." 225 ILCS 425/9(31).

Before McCabe can show a violation of the ICAA, he must first show that he has a cause of action under the ICAA. McCabe faces two obstacles to bringing a claim under the ICAA: (1) the ICAA does not explicitly provide for a private cause of action, and (2) to have a cause of action under the ICAA, the plaintiff must show actual injury. *Trull v. GC Servs. Ltd. P'ship*, 961 F. Supp. 1199, 1207 (N.D. Ill. 1997). We have serious doubts as to the first prong and we conclude that McCabe definitively fails on the second prong.

---

[14] In McCabe's complaint, he also alleged violations of several other provisions of the ICAA in regards to Class A: 225 ILCS 425/9(20), (26), (27) and (29). In McCabe's motion for summary judgment, however, he only alleges violations of § 425/9(31). Since McCabe has not developed these other claims in any way, we consider them waived. *See Veillard*, 24 F. Supp. 2d at 963 n.2; *Jenkins*, 999 F. Supp. at 1120 n.15. McCabe also alleged that Crawford violated 225 ILCS 425/9(20) with respect to Class B. However, because we granted summary judgment to Crawford on the FDCPA claims of Class B, then their claims under the ICAA also fail. Regardless, our conclusion that McCabe has not shown actual injury and thus cannot bring a claim under the ICAA would apply to all of the above subsections as well.

Very few cases have been brought under the ICAA. The first case to recognize an implied cause of action under the ICAA was *Sherman v. Field Clinic*, 392 N.E.2d 154, 161 (Ill. App. Ct. 1979). In that case, the plaintiff brought a lawsuit in response to the defendant's harassing and abusive conduct. *Sherman*, 392 N.E.2d at 156-57. The court held that there was an implied private right of action under the ICAA, and thus the plaintiff could sue for damages.[15] *Id.* at 161. Eighteen years passed before a federal district court had the opportunity to follow *Sherman*'s lead in implying a private cause of action. *See Trull*, 961 F. Supp. at 1206. In *Trull*, the plaintiff brought an action against a collection agency for falsely giving the impression that the collection agency operated a consumer reporting agency. *Id.* The court determined that because the Illinois state legislature had amended the ICAA since *Sherman's* decision without amending it to prohibit a private right of action then the legislature must have agreed that there was an implied right of action. *Id.* at 1206-07. However, the *Trull* court nevertheless dismissed the plaintiff's action because it interpreted *Sherman* to require actual injury before a claim could be brought under the ICAA. *Id.* at 1207. The court's reasoning was that if there were no actual damages then the Department of Regulation's enforcement of the ICAA would be adequate. *Id.*

While we are not entirely convinced that the ICAA should be interpreted to imply a private cause of action, we will presume for now that it does.[16] Assuming that the ICAA

---

[15] The court found an implied private cause of action because (1) the acts of the defendant were against the public policy of Illinois, (2) the plaintiffs were within the class of persons the statute was designed to protect, (3) the injuries suffered by the plaintiffs were within the range of injuries the statute was meant to prevent, (4) the need for a civil action was clear to give incentives to have the statute enforced, and (5) there was nothing in the statute indicating an intent to limit the remedies available. *Sherman*, 392 N.E.2d at 160-61.

[16] Although *Sherman* found an implied private cause of action in the ICAA, we are not bound by Illinois appellate court decisions. *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1301 (7th Cir. 1995). The ICAA gives responsibility to the Department of Professional Regulation

allows a private cause of action, we agree with the *Trull* court that the plaintiff must show actual injury before he can bring a claim. McCabe argues that he has suffered actual injury because he paid a $750.00 retainer fee to his attorney to deal with Crawford's collection activities. For support that attorney fees constitute actual damages under the ICAA, McCabe cites *Jones v. William Buick*, an Illinois Appellate court decision. 785 N.E.2d 910, 913 (Ill. App. Ct. 2003). *Jones*, however, dealt with a violation of the Consumer Fraud and Deceptive Business Practices Act, a completely separate act from the ICAA. *Jones*, 785 N.E.2d at 913-14. McCabe provides no argument as to why the *Jones* holding should apply to the ICAA. In addition, *Jones* stands only for the proposition that a prevailing party under the Consumer Fraud Act may recover attorney fees. *Id.* It in no way holds that attorney fees should be considered actual damages under the ICAA.

Because *Jones* is the only case McCabe offers to support his argument that attorney fees constitute actual damages, we are unwilling to reach this conclusion ourselves. If attorney fees constituted actual damages under the ICAA, every consumer who went to an attorney would be able to plead actual damages, frustrating the purpose for allowing the private cause of action in the first place: to allow a remedy only to those who have actually suffered from the debt collector's conduct. Because McCabe is unable to show actual injury under the ICAA, his claim fails and summary judgment is granted to the defendant on this count.[17]

---

to enforce any violations of the ICAA and clearly contemplates enforcement through Department action. 225 ILCS 425/9(a). We are, therefore, not convinced that the ICAA should be interpreted as providing an implied private cause of action. However, since McCabe fails to show actual injury under the ICAA, the issue is not determinative in the present case.

[17] We recognize that some members of Class A may have suffered actual damage from Crawford's violations and thus their claims may not suffer from the same deficiency as McCabe's. Nevertheless, summary judgment is granted to Crawford because McCabe no longer has standing to sue as class representative. To act as a class representative, "it is

## CONCLUSION

For the reasons contained in this opinion, the Court grants in part and denies in part McCabe's motion for summary judgment on Count I and grants summary judgment to Crawford on Counts II and IV. The Court specifically directs the Clerk of the Court to enter judgment pursuant to Federal Rule of Civil Procedure 54(b) in favor of Plaintiff Class on Count I. The Court will specifically retain jurisdiction to consider the issues remaining in this case including a potential damages judgment. The parties are directed to confer and to attempt to resolve the issues remaining in the case. Plaintiffs in particular need to determine if they wish to proceed with their remaining § 1692e claims. Recognizing that Crawford has made a jury demand for damages and is entitled to one, if this matter is not settled, damages will be decided by a jury. *See Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998) (holding that a party has a right under the FDCPA to have damages decided by a jury). A status hearing will be held on August 5, 2003 to set a firm litigation schedule for this matter.

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated: July 8, 2003**

essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele*, 149 F.3d at 592-93 (quotations and citations omitted). Because McCabe has not suffered actual injury under the ICAA and thus no longer has the same interest or injury as the class members, he can no longer act as class representative for the ICAA claim. While granting summary judgment to Crawford on this claim may seem harsh to those members of Class A who can show actual damage, it is appropriate to remember that all members of class A have already had a liability finding in their favor under the FDCPA and thus will be able to recover any actual damages, attorney fees, and statutory damages.